JOHN C. CRUDEN
Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

KARL J. FINGERHOOD (PA Bar ID No. 63260)
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel. (202) 514-7519
Fax. (202) 514-2583
E-Mail: karl.fingerhood@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) |
| ALCOA INC., et al., | ) 2:10-cv-05051-TJH (PLAx) |
| | ) |
| Defendants. | ) |

## CONSENT DECREE

TABLE OF CONTENTS

I.  BACKGROUND ........................................................................................1

II.  JURISDICTION .....................................................................................4

III.  PARTIES BOUND ................................................................................4

IV.  DEFINITIONS.......................................................................................5

V.  GENERAL PROVISIONS ...................................................................11

VI.  PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS13

VII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ............21

VIII.  ACCESS AND INSTITUTIONAL CONTROLS ........................................23

IX.  REPORTING REQUIREMENTS .........................................................29

XI.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS ....................31

XI.  PROJECT COORDINATORS .............................................................34

XII.  PERFORMANCE GUARANTEE .................................................................35

XIII.  CERTIFICATION OF COMPLETION ......................................................42

XIV.  EMERGENCY RESPONSE ........................................................................44

XV.  OBLIGATIONS OF SETTLING CASH DEFENDANTS ...........................45

XVI.  PAYMENTS FOR RESPONSE COSTS .....................................................46

XVII.  INDEMNIFICATION AND INSURANCE ...............................................49

XVIII.  FORCE MAJEURE ...............................................................................52

XIX.  DISPUTE RESOLUTION ...............................................................54

XX.  STIPULATED PENALTIES ............................................................58

XXI.  COVENANTS NOT TO SUE BY PLAINTIFF ...........................................63

XXII.  COVENANTS BY SETTLING DEFENDANTS .......................................67

XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ...........69

XXIV.  ACCESS TO INFORMATION .....................................................71

XXV.  RETENTION OF RECORDS ........................................................72

XXVI.  NOTICES AND SUBMISSIONS .................................................74

XXVII.  RETENTION OF JURISDICTION ..............................................75

XXVIII.  APPENDICES ......................................................................76

XXIX.  COMMUNITY INVOLVEMENT ................................................76

XXX.  MODIFICATION ...................................................................76

XXXI.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT .............77

XXXII.  SIGNATORIES/SERVICE .......................................................77

XXXIII.  FINAL JUDGMENT ..............................................................78

# I.  BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.     The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the United States Department of Justice for response actions at the Omega Chemical Corporation Superfund Site in Whittier, California ("Site"), together with accrued interest; and (2) performance of response actions by the Settling Work Defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of California (the "State") on January 21, 2009, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Federal natural resource trustee, the United States Department of Interior, Fish and Wildlife Service, on July 21, 1999, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee to participate in the negotiation of that Consent Decree.

E.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on January 19, 1999, 64 Fed. Reg. 2950.

F.      On February 28, 2001, the Court entered a Consent Decree ("Phase 1a Consent Decree") wherein the certain settling defendants ("Settling Work Defendants" as defined therein) agreed to perform certain work at the Site and to reimburse the United States for certain past response costs and oversight costs. The Phase 1a Consent Decree required, *inter alia*, that the certain defendants (1) implement a Remedial Investigation ("RI") and a Feasibility Study ("FS") for contamination of soils within the vadose zone within the Phase 1a Area and (2) fund and implement a removal action within the Phase 1a area to contain contaminated groundwater.  The Phase 1a Consent Decree also required payments from other defendants, in lieu of participation in the work required under that decree.

G.      On January 22, 2009, the Court entered an order approving the First Amendment to the Consent Decree, which addressed a new response action undertaken by certain defendants unrelated to existing work under the Phase 1a Consent Decree.  Pursuant to the First Amendment to the Phase 1a Consent Decree, certain defendants undertook work to address indoor air contamination issues at a nearby property ("Skateland property") alleged by EPA to be caused in part by vapor intrusion from hazardous substances associated with the Omega Site. Specifically, the work defendants under the Phase 1a Consent Decree organized and funded the purchase of the Skateland property and implemented an EPA-approved remedy that permanently discontinued its use as a commercial building.

H.      On January 22, 2009, the Court entered an order approving the Second Amendment to Consent Decree to add additional defendants as work defendants under the Phase 1a Consent Decree, to incorporate additional generator volume and payments of certain defendants, and to correct certain omissions and typographical errors in the caption.

I.      Work defendants under the Phase 1a Consent Decree are currently implementing the groundwater removal action pursuant to the requirements of that decree.

J.      Work defendants under the Phase 1a Consent Decree completed the OU-1 vadose zone remedial investigation report in November 2007, and completed the OU-1 feasbility study in May 2008.

K.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 6, 2008, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.   A copy of the transcript of the public meeting held on June 24, 2008 is available to the public as part of the administrative record upon which the Assistant Director of the Superfund Division based the selection of the response action.

L.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision for Operable Unit 1 (Soils) ("ROD"), signed on September 30, 2008, on which the State had a reasonable opportunity to review and comment, and on which the State has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  The selected remedy is intended to address soil and soil vapor contamination within OU-1 by removing soil contamination to reduce risk associated with exposure to contaminated soils and contaminant vapors, and to reduce the impact of soil contamination on groundwater.

M.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an

- 3 -

imminent or substantial endangerment to the public health or welfare or the environment.

N.     Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Work Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

O.     Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action selected by the ROD and the Work to be performed by Settling Work Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

P.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

- 4 -

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Work Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing any Settling Work Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Work Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Work Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated under this Consent Decree in accordance with its terms.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Work Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.  DEFINITIONS

4.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

- 5 -

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVIII).  In the event of conflict between this Decree and any appendix, this Decree shall control.

The term "day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the earlier of the date upon which this Consent Decree is entered by the Court or the date upon which the order granting the motion to enter the Consent Decree is entered by the Court, as recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or in otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VIII (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XIV (Emergency Response), and

Paragraph 83 of Section XXI (Work Takeover), and Section XXIX (Community Involvement).

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Omega Chemical Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"Omega Property" shall mean that portion of the Omega Chemical Corporation Superfund Site consisting of the property formerly owned by the Omega Chemical Corporation, encompassing approximately one acre, located at 12504 and 12508 East Whittier Boulevard, Whittier, California, Los Angeles County, California, and bounded by fencing and existing streets.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Manual approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendants) and the Statement of Work (SOW).

"OU-1" or "Operable Unit 1" shall have the same meaning as and be coextensive with the term "Phase 1a Area" as defined herein.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs", for purposes of this Consent Decree, shall be equal to One Million Five Hundred Thousand Dollars ($1,500,000).  The parties agree that this sum includes only a portion of the direct and indirect costs that the United States has paid at or in connection with the Site, for which it has not been reimbursed.  The parties agree that Settling Work Defendants' payment of $1,500,000 shall be considered a partial payment and a credit towards the total sum of unreimbursed response costs the United States has incurred as of the Effective Date.  Interest shall continue to accrue on all unpaid past response costs in accordance with Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and SOW, and any modified standards established pursuant to this Consent Decree.

"Phase 1a Area" shall mean the area of soil and groundwater contamination within and below the Omega Property and extending downgradient approximately 100 feet southwest of Putnam Street, Whittier, California.  This area is defined as "OU-1" in the ROD and is represented graphically in Figure 5 therein.  This term is meant to have the same meaning and scope as the term "Phase 1a Area" in the Phase 1a Consent Decree.

"Phase 1a Consent Decree" shall mean the consent decree (#00-12471-TIH), entered by the Court on February 28, 2001 between the United States and certain settling defendants, wherein certain settling defendants agreed to perform certain work at the Omega Chemical Corporation Superfund Site ("Site") and to reimburse the United States for certain costs as defined therein, and all amendments thereto.

"Plaintiff" shall mean the United States of America

- 8 -

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901, *et seq*. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to OU-1 at the Site, signed on September 30, 2008 by the delegate of the Regional Administrator, EPA Region 9, and all attachments thereto.  The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Remedial Design and Operation and Maintenance, to be undertaken by Settling Work Defendants to implement the ROD, in accordance with the SOW, the final RD/RA Work Plan and other plans approved by EPA.

 "Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Work Defendants to develop the final plans and specifications for the Remedial Action pursuant to the RD/RA Work Plan.

"RD/RA Work Plan" shall mean the document developed pursuant to Paragraph 10 and the SOW, and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Cash Defendants" shall mean those Parties listed in Appendix C, who are signatories to this Consent Decree, who will participate in this Consent Decree with the other Parties to this Consent Decree, primarily through cash payments, and are not involved in performing the Work under this Consent Decree. The term "Settling Cash Defendant" shall also apply to certain affiliates of each Settling Cash Defendant; where the Settling Cash Defendant is a trust, its trustees and successor trustees appointed to carry out the purposes of said trust; where the Settling Cash Defendant is a corporate entity, its corporate successors to potential

- 9 -

1   liability for the Site; and where the Settling Cash Defendant is a partnership, its

2   partners.  However, the term "Settling Cash Defendant" shall not include any

3   person or entity with liability for the Site independent of that person's or entity's

4   affiliation with a Settling Cash Defendant, including liability for Waste Material

5   that has not been attributed to a Settling Cash Defendant.

6         "Settling Defendants" shall mean the Settling Work Defendants and Settling

7   Cash Defendants.

8         "Settling Work Defendants" shall mean those Parties identified in Appendix

9   D, who are signatories to this Consent Decree, who are required to perform the

10  Work, whether they perform the Work individually or through any legal entity that

11  they may establish to perform the Work.  The term "Settling Work Defendants"

12  shall also apply to certain affiliates of each Settling Work Defendants:  where the

13  Settling Work Defendants is a trust, its trustees and successor trustees appointed to

14  carry out the purposes of said trust; where the Settling Work Defendant is a

15  corporate entity, its corporate successors to potential liability for the Site; and

16  where the Settling Work Defendant is a partnership, its partners.  However, the

17  term "Settling Work Defendant" shall not include any person or entity with

18  liability for the Site independent of that person's or entity's affiliation with a

19  Settling Work Defendant, including liability for Waste Material that has not been

20  attributed to a Settling Work Defendant.

21        "Site" shall mean the Omega Chemical Corporation Superfund Site, listed

22  on the National Priorities List on January 19, 1999, 64 Fed. Reg. 2950.

23        "State" shall mean the State of California and any agencies or

24  instrumentalities thereof.

25        "Statement of Work" or "SOW" shall mean the statement of work for

26  implementation of the Remedial Design, Remedial Action, and Operation and

27

28                             - 10 -

Maintenance at the Site, as set forth in Appendix B to this Consent Decree, and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Work Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); or as any of the foregoing terms are defined under any appropriate or applicable provisions of California law.

"Work" shall mean all activities and obligations the Settling Work Defendants are required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V.  GENERAL PROVISIONS

5.  <u>Objectives of the Parties</u>.  The objectives of the Parties in entering into this Consent Decree are to protect public health, welfare or the environment by the design and implementation of response actions at the Site by the Settling Work Defendants, to pay response costs of the Plaintiff, and to partially resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.  <u>Commitments by Settling Defendants</u>.

a.  Settling Work Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Work Defendants and approved by EPA pursuant to this Consent Decree.  Settling Work Defendants also shall pay the United States for Past Response Costs and Future Response Costs as provided in this Consent

- 11 -

Decree, as well as any modifications made thereto pursuant to the terms of this Consent Decree.

b.      The obligations of the Settling Work Defendants to perform the Work and the obligation of the Settling Work Defendants to pay amounts owed the United States under this Consent Decree are joint and several.  In the event of the insolvency or other failure of any one or more Settling Work Defendants to implement the requirements of this Consent Decree, the remaining Settling Work Defendants shall complete all such requirements.

c.      The Settling Cash Defendants shall cooperate with the EPA and the Settling Work Defendants to effectuate the purposes of this Consent Decree, including, but not limited to, those obligations set forth in Section XV (Obligations of Settling Cash Defendants).

7.      <u>Compliance with Applicable Law</u>.  All activities undertaken by Settling Work Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Work Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.      <u>Permits</u>.

a.      As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for the implementation of the Work).  The Parties believe that all work under this Consent Decree will be on or in close proximity to the Site and therefore, pursuant

to 42 U.S.C. § 9621(e) and NCP Section 300.400(e), the Parties anticipate that no permit shall be required by any State, local or Federal entity for any aspect of the Work.    In the unanticipated event that any portion of the Work is not on-Site and requires a federal, state or local permit or approval, Settling Work Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  The EPA agrees to cooperate with and assist the Settling Work Defendants in obtaining any necessary permits or approvals.

b. Settling Work Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any Federal or State statute or regulation.

VI. PERFORMANCE OF THE WORK BY SETTLING WORK DEFENDANTS

9. Selection of Supervising Contractor.

a. All aspects of the Work to be performed by Settling Work Defendants pursuant to Sections VI (Performance of the Work by Settling Work Defendants), VII (Quality Assurance, Sampling and Data Analysis), VIII (Access and Institutional Controls), and XIV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA.  Within ten days after the lodging of this Consent Decree, Settling Work Defendants shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Work Defendants shall demonstrate that the proposed contractor has a

quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001; Reissued May 2006) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.  If at any time thereafter, Settling Work Defendants propose to change a Supervising Contractor, Settling Work Defendants shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.  EPA shall not unreasonably withhold or delay authorization of the Contractor .

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Work Defendants in writing.  Settling Work Defendants shall submit to EPA a list of contractors, including the qualifications of each contractor, which would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Work Defendants may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Work Defendants from meeting one or more deadlines in a plan approved

- 14 -

by EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

10.   <u>Remedial Design</u>.

a.   Within 15 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 9, Settling Work Defendants shall submit to EPA and the State a work plan for the design of the remedial action at the Site, as set forth in the ROD, in accordance with the SOW, and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW ("RD/RA Work Plan").  Upon its approval by EPA, the RD/RA Work Plan shall be incorporated into and become enforceable under this Consent Decree.  At the same time as they submit the RD/RA Work Plan, Settling Work Defendants shall submit to EPA a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.   The RD/RA Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of:  (1) Site Management Plan (including an RD/RA Contingency Plan); (2) Health and Safety Plan; (3) Sampling and Analysis Plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan (QAPP) in accordance with Section VII (Quality Assurance, Sampling and Data Analysis) and Field Sampling Plan); (4) a Construction Quality Assurance Plan; (5) an Institutional Controls Implementation and Assurance Plan; (6) quarterly progress reports; (7) a preliminary design submission; (8) an intermediate design submission; and (9) a prefinal/final design submission.

c.      Upon approval of the RD/RA Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submission of the Health and Safety Plan for all field activities to EPA and the State, Settling Work Defendants shall implement the RD/RA Work Plan.  Settling Work Defendants shall submit to EPA and the State all plans, reports, and other deliverables required under the approved RD/RA Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Work Defendants shall not commence further Remedial Design activities at the Site prior to approval of the RD/RA Work Plan.

d.      The preliminary design submission shall include, at a minimum, the following: (1) design criteria; (2) project delivery strategy; (3) preliminary plans, drawings and sketches; (4) required specifications in outline form; (5) preliminary construction schedule; and other items described in the SOW.

e.      The intermediate design submission shall be a continuation and expansion of the preliminary design, and shall contain the items described in the SOW.  Any value engineering proposals must be identified and evaluated during this review.

f.      The pre-final/final design submission shall include, at a minimum, the following: (1) final plans and specifications; (2) Operation and Maintenance Manual; (3) Construction Quality Assurance Plan; and other items described in the SOW.  The Construction Quality Assurance Plan, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

11.     Remedial Action.

a.      Within 30 days after EPA's approval of the prefinal design submission, Settling Work Defendants shall submit to EPA and the State a work plan for the performance of the Remedial Action at the Site, and which supplements and updates the RD/RA Work Plan ("Remedial Action Work Plan"). Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree.  Settling Work Defendants shall submit to EPA and the State:  (1) a Construction Health and Safety Plan for field activities required by the Remedial Action Work Plan, which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120; (2) a construction schedule for completion of the Remedial Action; and other deliverables, as described in the SOW.  The timeframes for submittal of the Construction Health and Safety Plan and construction schedule for completion of the Remedial Action shall be those set forth in the SOW.

b.      The Remedial Action section of the RD/RA Work Plan shall include the following:  (1) a schedule for the completion of the Remedial Action; (2) method and schedule for selection of contractors; (3) plans and schedules for field investigation; (4) methods for satisfying permitting requirements; (5) methodology for implementation of the Operation and Maintenance Manual; (6) methodology for implementation of the Contingency Plan; (7) plans and schedules for formulation of the Remedial Action team; (8) methodology for implementation of the Construction Quality Assurance Plan; (9) procedures and plans for the decontamination of equipment and the disposal of contaminated materials; (10) procurement and contracting details; and (11) a schedule for developing and submitting other required Remedial Action plans.  The Remedial Action section of the RD/RA Work Plan also shall include the methodology for implementation of

the Construction Quality Assurance Plan and a schedule for implementation of all Remedial Action tasks identified in the final design submission and shall identify the initial formulation of Settling Defendants' Remedial Action project team (including, but not limited to, the Supervising Contractor).

c.      Upon approval of the updated RD/RA Work Plan and Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, Settling Work Defendants shall implement the activities required under the Remedial Action Work Plan.  Settling Work Defendants shall submit to EPA and the State all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

12.    Settling Work Defendants shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13.    <u>Modification of the SOW or Related Work Plans</u>.

a.      If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the ROD.

b.      For the purposes of this Paragraph 13 and Paragraph 45 (Completion of the Work) only, the "scope of the remedy selected in the ROD" is:

removal of the potential threat to human health from contaminated soil and soil vapor by using soil vapor extraction (SVE) followed by carbon filters to remove and treat volatile organic compounds (VOCs) and semi-volatile organic compounds present in the OU-1 soils.  If necessary to meet Performance Standards, contingencies for increasing the effectiveness of SVE, including hot air injection and dual phase extraction, will be implemented.  Institutional controls will be used within the Phase 1a Area, to maintain paved areas and to place restrictions on excavation during operation of the SVE system.  It is expected that institutional controls will remain in place until such time as EPA deems the OU-1 soil remedy complete.

c.      If Settling Work Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX (Dispute Resolution).  The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.      Settling Work Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

f.      Any modifications shall be implemented pursuant to Section XXX (Modification).

14.    Nothing in this Consent Decree, the SOW, or in work plans developed pursuant to the SOW constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

1      15.   Off-Site Shipment of Waste Material.

2            a.     Settling Work Defendants shall, prior to any off-Site shipment

3   of Waste Material from the Site to an out-of-state waste management facility,

4   provide written notification to the appropriate state environmental official in the

5   receiving facility's state and to the EPA Project Coordinator of such shipment of

6   Waste Material.  However, this notification requirement shall not apply to any off-

7   Site shipments when the total volume of all such shipments will not exceed ten

8   cubic yards.

9            (1)   Settling Work Defendants shall include in the written

10   notification the following information, where available: (a) the name and location

11   of the facility to which the Waste Material is to be shipped; (b) the type and

12   quantity of the Waste Material to be shipped; (c) the expected schedule for the

13   shipment of the Waste Material; and (d) the method of transportation.  Settling

14   Work Defendants shall notify the state in which the planned receiving facility is

15   located of major changes in the shipment plan, such as a decision to ship the Waste

16   Material to another facility within the same state, or to a facility in another state.

17            (2)   The identity of the receiving facility and state will be

18   determined by Settling Work Defendants following the award of the contract for

19   Remedial Action construction.  Settling Work Defendants shall provide the

20   information required by Paragraph 15.a as soon as practicable after the award of

21   the contract and before the Waste Material is actually shipped.

22            b.     Before shipping any hazardous substances, pollutants, or

23   contaminants from the Site to an off-Site location, Settling Work Defendants shall

24   obtain EPA's certification that the proposed receiving facility is operating in

25   compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. §

26   9621(d)(3), and 40 C.F.R. 300.440.  Settling Work Defendants shall only send

27   hazardous substances, pollutants, or contaminants from the Site to an off-Site

28                                   - 20 -

1  facility that complies with the requirements of the statutory provision and

2  regulations cited in the preceding sentence.

3      VII.  <u>QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS</u>

4      16.  <u>Quality Assurance</u>.

5        a.  Settling Work Defendants shall use quality assurance, quality

6  control, and chain of custody procedures for all treatability, design, compliance

7  and monitoring samples in accordance with "EPA Requirements for Quality

8  Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance

9  for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February

10  1998), and subsequent amendments to such guidelines upon notification by EPA to

11  Settling Work Defendants of such amendment.  Amended guidelines shall apply

12  only to procedures conducted after such notification.

13        b.  Prior to the commencement of any monitoring project under

14  this Consent Decree, Settling Work Defendants shall submit to EPA for approval,

15  after a reasonable opportunity for review and comment by the State, a Quality

16  Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and

17  applicable guidance documents.  If relevant to the proceeding, the Parties agree

18  that validated sampling data generated in accordance with the QAPP(s) and

19  reviewed and approved by EPA shall be admissible as evidence, without objection,

20  in any proceeding under this Decree.  Settling Work Defendants shall ensure that

21  EPA and State personnel and its authorized representatives are allowed access at

22  reasonable times to all laboratories utilized by Settling Work Defendants in

23  implementing this Consent Decree.  In addition, Settling Work Defendants shall

24  ensure that such laboratories shall analyze all samples submitted by EPA pursuant

25  to the QAPP for quality assurance monitoring.  Settling Work Defendants shall

26  ensure that the laboratories they utilize for the analysis of samples taken pursuant

27  to this Decree perform all analyses according to accepted EPA methods.  Accepted

28                           - 21 -

EPA methods consist of those methods that are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Work Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Work Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Work Defendants shall use only laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001; Reissued May 2006) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Work Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

17. Upon request, Settling Work Defendants shall allow split or duplicate samples to be taken by EPA or their authorized representatives. Settling Work Defendants shall notify EPA not less than 10 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Settling Work Defendants to take split or duplicate

samples of any samples it takes as part of the Plaintiff's oversight of Settling Work Defendants' implementation of the Work.

18.     Settling Work Defendants shall submit to EPA two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Work Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

19.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## VIII.   ACCESS AND INSTITUTIONAL CONTROLS

20.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a.     commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, and Settling Work Defendants and their contractors and representatives, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)      Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)      Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)      Implementing the Work pursuant to the conditions set forth in Paragraph 83 (Work Takeover) of this Consent Decree;

(8)      Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Work Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)      Assessing Settling Work Defendants' compliance with this Consent Decree; and

(10)     Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.      commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

c.      If EPA so requests, execute and record in the Recorder's Office, Los Angeles County, State of California, an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 20.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 20.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or

ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, and (iii) the other Settling Defendants and their representatives. Such Settling Defendants shall, within 45 days of EPA's request, submit to EPA for review and approval with respect to such property:

(1)    A draft easement that is enforceable under the laws of the State of California, and

(2)    a current title insurance commitment or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, such Settling Work Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Recorder's Office, Los Angeles County, State of California. Within 30 days of recording the easement, such Settling Work Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S.

Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

21.   If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, Settling Work Defendants shall use best efforts to secure from such persons:

a.   an agreement to provide access thereto for Settling Work Defendants and their contractors and representatives, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 20.a of this Consent Decree;

b.   If EPA so requests, an agreement, in the form of a land use covenant under California law, enforceable by the Settling Work Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

c.   If EPA so requests, the execution and recordation in the Recorder's Office, Los Angeles County, State of California, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 21.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 21.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  The access rights and/or rights to

enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, and (iii) the other Settling Work Defendants and their representatives.  Within 45 days of EPA's request, Settling Work Defendants shall submit to EPA for review and approval with respect to such property:

          (1)     A draft easement that is enforceable under the laws of the State of California, and

          (2)     a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Work Defendants are unable to obtain release or subordination of such prior liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Work Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's Office, Los Angeles County, State of California.  Within 30 days of the recording of the easement, Settling Work Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps.  If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

22.     For purposes of Paragraphs 20 and 21 of this Consent Decree, "best efforts" includes the offer of payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  Notwithstanding the foregoing, the term "best efforts" shall not require the payment of any sums of money to any of the current or past owners and operators of the Omega Property, including, but not limited to, Dennis O'Meara, Omega Chemical Corporation, or any company owned or affiliated, directly or indirectly, by Dennis O'Meara or Omega Chemical Corporation.  If (a) any access or land/water use restriction agreements required by Paragraphs 21a. or 21.b of this Consent Decree are not obtained within 45 days of the date of entry of this Consent Decree, (b) or any access easements or restrictive easements required by Paragraph 21.c of this Consent Decree are not submitted to EPA in draft form within 45 days of the date of entry of this Consent Decree, or (c) Settling Work Defendants are unable to obtain an agreement pursuant to Paragraph 20.c.(1) or Paragraph 21.c.(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this consent decree within 45 days of the date of entry of this consent decree, Settling Work Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Work Defendants have taken to attempt to comply with Paragraph 20 or 21 of this Consent Decree.  The United States may, as it deems appropriate, assist Settling Work Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance.  Settling Work Defendants shall reimburse the United States in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred, direct or indirect, by

the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

23.   If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Work Defendants shall cooperate with EPA's efforts to secure such governmental controls.

24.   Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## IX.  REPORTING REQUIREMENTS

25.   In addition to any other requirement of this Consent Decree, Settling Work Defendants shall submit two copies to EPA and one copy to the State of written quarterly progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous quarter; (b) include a summary of all validated results of sampling and tests and all other data received or generated by Settling Work Defendants or their contractors or agents in the previous quarter; (c) identify all plans, reports, and other deliverables required by this Consent Decree completed and submitted during the previous quarter; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next quarter and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays

- 29 -

encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Work Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Involvement Plan during the previous quarter and those to be undertaken in the next 12 weeks.  Settling Work Defendants shall submit these progress reports to EPA and the State by the tenth day of the first month of the next quarter following the lodging of this Consent Decree until EPA notifies Settling Work Defendants pursuant to Paragraph 45.b of Section XIII (Certification of Completion).  If requested by EPA, Settling Work Defendants shall also provide briefings for EPA to discuss the progress of the Work.

26.    Settling Work Defendants shall notify EPA of any change in the schedule described in the quarterly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

27.    Upon the occurrence of any event during performance of the Work that Settling Work Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act (EPCRA), 42 U.S.C. § 11004, Settling Work Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 9, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

28.     Within 20 days of the onset of such an event, Settling Work Defendants shall furnish to Plaintiff a written report, signed by Settling Work Defendants' Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event, Settling Work Defendants shall submit a report setting forth all actions taken in response thereto.

29.     Settling Work Defendants shall submit two copies of all plans, reports, data, and other deliverables required by the SOW, the RD/RA Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Work Defendants shall simultaneously submit one copy of all such plans, reports, data, and other deliverables to the State.  Upon request by EPA, Settling Work Defendants shall submit in electronic form all or any portion of any deliverables Settling Work Defendants are required to submit pursuant to the provisions of this Consent Decree.

30.     All deliverables submitted by Settling Work Defendants to EPA which purport to document Settling Work Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Work Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

31.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree or the SOW, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that Settling Work Defendants modify the submission; or (e) any combination of the above. However, EPA will not modify a submission without first providing Settling Work

Defendants at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

32.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraphs 31(a), 31(b) or 31(c), Settling Work Defendants shall proceed to take any action required by the plan, report, or other deliverable, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 31(c) and the submission has a material defect, the United States retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

33.    <u>Resubmission of Plans</u>.

a.    Upon receipt of a notice of disapproval pursuant to Paragraph 31(d), Settling Work Defendants shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the 30-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 34 and 35.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 31(d), Settling Work Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve

Settling Work Defendants of any liability for stipulated penalties under Section XX (Stipulated Penalties).

34.    In the event that a resubmitted plan, report or other deliverable, or portion thereof, is disapproved by EPA, EPA may again require Settling Work Defendants to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report, or other deliverable.  Settling Work Defendants shall implement any such plan, report, or other deliverable as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

35.    If upon resubmission, a plan, report, or other deliverable is disapproved or modified by EPA due to a material defect, Settling Work Defendants shall be deemed to have failed to submit such plan, report, or other deliverable timely and adequately unless Settling Work Defendants invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX (Stipulated Penalties).

36.    All plans, reports, and other deliverables required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other deliverable required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

# XI.  PROJECT COORDINATORS

37.     Within 20 days of lodging this Consent Decree, Settling Work Defendants and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Settling Work Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Settling Work Defendants' Project Coordinator shall not be an attorney for any of Settling Work Defendants in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

38.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the NCP, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

## XII.  PERFORMANCE GUARANTEE

39.    In order to ensure the full and final completion of the Work, Settling Work Defendants shall establish and maintain a Performance Guarantee, initially in the amount of Eight and One-Half Million Dollars, for the benefit of EPA ($8,500,000) (hereinafter "Estimated Cost of the Work").  The Performance Guarantee, which must be satisfactory in form and substance to EPA, shall be in one or more of the following mechanisms (provided that, if Settling Work Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to trust funds, surety bonds guaranteeing payment, letters of credit, and insurance policies):

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.    A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.    A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e.    A demonstration by one or more Settling Work Defendants that such Settling Work Defendant(s), when considered in the aggregate, meet the

financial test criteria of 40 C.F.R. § 264.143(f)(1)(i) or (ii), with respect to twice the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured to EPA through the use of a financial test or guarantee).  The demonstration shall be made by:

(i) submission of such Settling Work Defendant(s)' independently audited financial statements (e.g., a 10-K report submitted to the Securities and Exchange Commission), including a letter signed by each of such Settling Work Defendant(s)' chief financial officer(s) certifying the integrity and accuracy of the financial data, as required pursuant to the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7241, and a copy of the independent certified public accountant's report on examination of the Settling Work Defendant(s)' financial statements for the latest completed fiscal year;

and

(ii)  if a Settling Work Defendant applies the criteria of 40 C.F.R. § 264.143(f)(ii), a report, including a printout from ratings available online, from the Standard and Poor's or Moody's ratings services indicating the current bond rating for that Settling Work Defendant.  The foregoing demonstration requirements are in lieu of the requirements of 40 C.F.R. § 264.143(f)(3); or

f.      A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Work Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Work Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental

- 36 -

obligations financially assured to EPA through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

40.     Settling Work Defendants have selected, and EPA has found satisfactory, as an initial Performance Guarantee, the demonstration pursuant to Paragraph 39.e, in the form attached hereto as Appendix F.  Within ten days after the Effective Date, Settling Work Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix F, and such Performance Guarantee(s) shall thereupon be fully effective.  Within 30 days of the Effective Date, Settling Work Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to the United States and EPA as specified in Section XXVI.

41.     If at any time during the effective period of this Consent Decree, Settling Work Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraphs 39.e or 39.f, the relevant Settling Work Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1).  For purposes of

the Performance Guarantee methods specified in this Section XII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work required under this Consent Decree, and the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work.

42.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Work Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Work Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Work Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of any Settling Work Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 39 that satisfies all requirements set forth in this Section XII.  In seeking approval for a revised or alternative form of Performance Guarantee, Settling Work Defendants shall follow the procedures set forth in Paragraph 45.b.(2).  Settling Work Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Work Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

43.     The commencement of any Work Takeover pursuant to Paragraph 83 shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraphs 39.a, 39.b, 39.c, 39.d or 39.f, and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 39.e, Settling Work Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a Performance Guarantee that such issuer intends to cancel the Performance Guarantee mechanism it has issued, then, unless Settling Work Defendants provide a substitute Performance Guarantee mechanism in accordance with this Section XII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing Performance Guarantee.

44.     <u>Modification of Amount and/or Form of Performance Guarantee</u>.

a.     <u>Reduction of Amount of Performance Guarantee</u>.  If Settling Work Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 39, Settling Work Defendants may, on any anniversary of the Effective Date, or at any other time

agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed.  Settling Work Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated.  In seeking approval for a revised or alternative form of Performance Guarantee, Settling Work Defendants shall follow the procedures set forth in Paragraph 44.b.(2).  If EPA decides to accept such a proposal, EPA will notify the petitioning Settling Work Defendants of such decision in writing.  After receiving EPA's written acceptance, Settling Work Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance.  In the event of a dispute, Settling Work Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).  No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 42 or 44.b.

        b.     Change of Form of Performance Guarantee.

        (1)     If, after the Effective Date, Settling Work Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Work Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 44.b.(2).  Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and

unreviewable discretion, and such decision shall not be subject to challenge by Settling Work Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Work Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Work Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions).  EPA will notify Settling Work Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Paragraph.  Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Work Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective.  Settling Work Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days of receiving a written decision approving the proposed revised or alternative Performance

- 41 -

1  Guarantee in accordance with Section XXVI (Notices and Submissions), and to the

2  United States and EPA as specified in Section XXVI.

3        c.      <u>Release of Performance Guarantee</u>.  If Settling Work Defendants

4  receive written notice from EPA in accordance with Paragraph 45 that the Work

5  has been fully and finally completed in accordance with the terms of this Consent

6  Decree, or if EPA otherwise so notifies Settling Work Defendants in writing,

7  Settling Work Defendants may thereafter release, cancel, or discontinue the

8  Performance Guarantee(s) provided pursuant to this Section.  Settling Work

9  Defendants shall not release, cancel, or discontinue any Performance Guarantee

10  provided pursuant to this Section except as provided in this Paragraph.  In the

11  event of a dispute, Settling Work Defendants may release, cancel, or discontinue

12  the Performance Guarantee(s) required hereunder only in accordance with a final

13  administrative or judicial decision resolving such dispute pursuant to Section XIX

14  (Dispute Resolution).

15                    XIII.  <u>CERTIFICATION OF COMPLETION</u>

16        45.     <u>Completion of the Work</u>.

17        a.      Within 90 days after Settling Work Defendants conclude that

18  all phases of the Work (including O&M) have been fully performed, Settling Work

19  Defendants shall schedule and conduct a pre-certification inspection to be attended

20  by Settling Work Defendants and EPA.  If, after the pre-certification inspection,

21  Settling Work Defendants still believe that the Work has been fully performed,

22  Settling Work Defendants shall submit a written report (i.e., a Work Complete

23  Report) by a registered professional engineer stating that the Work has been

24  completed in full satisfaction of the requirements of this Consent Decree.  The

25  report shall contain the following statement, signed by a responsible corporate

26  official of a Settling Work Defendant or Settling Work Defendants' Project

27  Coordinator:

28                        - 42 -

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Work Defendants in writing of the activities that must be undertaken by Settling Work Defendants pursuant to this Consent Decree to complete the Work provided, however, that EPA may only require Settling Work Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 13.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Work Defendants to submit a schedule to EPA for approval pursuant to Section X (EPA Approval of Plans and Other Submissions).  Settling Work Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Work Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Work Defendants in writing.

## XIV.  EMERGENCY RESPONSE

46.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Work Defendants shall, subject to Paragraph 47, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Work Defendants shall notify the EPA Emergency Response Unit, Region 9.  Settling Work Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Work Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Settling Work Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Payments for Response Costs).

47.     Subject to Section XXI (Covenants Not to Sue by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual

or threatened release of Waste Material on, at, or from the Site, (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (c) to seek recovery of response costs for actions taken pursuant to this Paragraph.

## XV.  OBLIGATIONS OF SETTLING CASH DEFENDANTS

48.    a.      No later than thirty (30) days following the Effective Date of this Consent Decree, all funds to be paid by or on behalf of each Settling Cash Defendant shall be deposited into a Qualified Settlement Fund under Treas. Reg. §1.468(b) and Treas. Reg. §301.7701-4(e) or such other funding mechanism established and designated by mutual agreement of the Settling Defendants, in contribution toward the Work, toward payment of Past Response Costs and Future Response Costs, and fulfilling legal obligations related to the Work. Notwithstanding the foregoing sentence, one Settling Cash Defendant, listed on Appendix E hereto, has negotiated an arrangement with the Settling Work Defendants whereby, rather than making a lump sum payment, it will make payments according to the payment schedule set forth on Appendix E attached hereto.  Such Settling Cash Defendant who is making periodic payments shall be subject to the provisions pertaining to the failure to make such payments in the manner and at such times as agreed upon.  Each Settling Cash Defendant's obligations under this Consent Decree shall be limited to its obligations under Section VIII (Access and Institutional Controls), Section XXV (Retention of Records), and the payment of its requisite amount as agreed to by the Settling Cash Defendants in that certain settlement agreement entered into with those Settling Work Defendants eligible to sign, and who do sign, such agreement.  No Settling Cash Defendant shall be responsible for any payment required of any other party. The name of each Settling Cash Defendant shall be submitted by the Settling Work

Defendants to the United States as provided in Section XXVI (Notices and Submissions) upon execution of the Consent Decree.  The name of each Settling Cash Defendant is appended as Appendix C to this Consent Decree at the time of lodging.

b.      The failure of any Settling Cash Defendant to satisfy its payment obligation pursuant to this Paragraph shall not defer the obligations of the Settling Work Defendants under this Consent Decree.

c.      Each Settling Cash Defendant shall enter into, and remain in compliance with, that certain settlement agreement with those Settling Work Defendants eligible to sign, and who do sign, such agreement.

d.      Each Settling Defendant shall cooperate with the other Settling Defendants in good faith to effect the obligations and provisions set forth in this Consent Decree.

## XVI.  PAYMENTS FOR RESPONSE COSTS

49.      Payment for Past Response Costs.

a.      Within 30 days of the Effective Date, Settling Work Defendants shall pay to EPA $1,500,000 in payment for Past Response Costs.  Payment shall be made in accordance with Paragraphs 51.a and 51.c (Payment Instructions).

b.      The total amount to be paid by Settling Work Defendants pursuant to Paragraph 49.a shall be deposited by EPA in the Omega Chemical Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

50.      Payments for Future Response Costs.  Settling Work Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.      On a periodic basis, the United States will send Settling Work Defendants a bill requiring payment that includes a Regionally-prepared itemized

1    cost summary and DOJ-prepared cost summary, which reflects costs incurred by

2    DOJ and its contractors, if any.  Settling Work Defendants shall make all payments

3    within 45 days of Settling Work Defendants' receipt of each bill requiring

4    payment, except as otherwise provided in Paragraph 52, in accordance with

5    Paragraphs 51.b and 51.c (Payment Instructions).

6         b.    The total amount to be paid by Settling Work Defendants

7    pursuant to Paragraph 50.a shall be deposited by EPA in the Omega Chemical

8    Superfund Site Special Account to be retained and used to conduct or finance

9    response actions at or in connection with the Site, or to be transferred by EPA to

10   the EPA Hazardous Substance Superfund.

11        51.   Payment Instructions.

12        a.    Instructions for Past Response Costs Payments.  All payments

13   required, elsewhere in this Consent Decree, to be made in accordance with this

14   Paragraph 51.a shall be made by FedWire Electronic Funds Transfer ("EFT") to

15   the U.S. Department of Justice account in accordance with current EFT

16   procedures, and in accordance with instructions provided to Settling Work

17   Defendants by the Financial Litigation Unit of the United States Attorney's Office

18   for the Central District of California following lodging of the Consent Decree.

19        b.    Instructions for Future Response Costs Payments and Stipulated

20   Penalties.  All payments required, elsewhere in this Consent Decree, to be made in

21   accordance with this Paragraph 51.b shall be made by EFT to the EPA Regional

22   Superfund Lockbox in accordance with current EFT procedures, and in accordance

23   with instructions provided to Settling Work Defendants by EPA following lodging

24   of the Consent Decree.

25        c.    Instructions for All Payments.  All payments made under

26   Paragraph 51.a or 51.b shall reference the EPA Site/Spill ID Number 09BC and

27   DOJ Case Number 90-11-3-06529.  At the time of any payment required to be

28                                    - 47 -

1  made in accordance with Paragraphs 51.a or 51.b, Settling Work Defendants shall

2  send notice that payment has been made to the United States, to EPA and to the

3  Regional Financial Management Officer, in accordance with Section XXVI

4  (Notices and Submissions), and to the EPA Cincinnati Finance Office by mail at

5  26 Martin Luther King Drive, Cincinnati, Ohio 45268, and by email at

6  acctsreceivable.cinwd@epa.gov.

7      52.   Settling Work Defendants may contest any Future Response Costs

8  billed under Paragraph 50 if they determine that the United States has made a

9  mathematical or accounting error, included a cost item that is not within the

10  definition of Future Response Costs, or if they believe EPA incurred excess costs

11  as a direct result of an EPA action that was inconsistent with a specific provision or

12  provisions of the NCP.  Such objection shall be made in writing within 45 days of

13  receipt of the bill and must be sent to the United States pursuant to Section XXVI

14  (Notices and Submissions).  Any such objection shall specifically identify the

15  contested Future Response Costs and the basis for objection.  In the event of an

16  objection, Settling Work Defendants shall pay all uncontested Future Response

17  Costs to the United States within 45 days of Settling Work Defendants' receipt of

18  the bill requiring payment.  Simultaneously, Settling Work Defendants shall

19  establish an interest-bearing escrow account in a federally-insured bank duly

20  chartered in the State of California and remit to that escrow account funds

21  equivalent to the amount of the contested Future Response Costs.  Settling Work

22  Defendants shall send to the United States, as provided in Section XXVI (Notices

23  and Submissions), a copy of the transmittal letter and check paying the uncontested

24  Future Response Costs, and a copy of the correspondence that establishes and

25  funds the escrow account, including, but not limited to, information containing the

26  identity of the bank and bank account under which the escrow account is

27  established as well as a bank statement showing the initial balance of the escrow

28                                          - 48 -

1   account.  Simultaneously with establishment of the escrow account, Settling Work

2   Defendants shall initiate the Dispute Resolution procedures in Section XIX

3   (Dispute Resolution).  If the United States prevails in the dispute, Settling Work

4   Defendants shall pay the sums due (with accrued interest) to the United States

5   within five days of the resolution of the dispute.  If Settling Work Defendants

6   prevail concerning any aspect of the contested costs, Settling Work Defendants

7   shall pay that portion of the costs (plus associated accrued interest) for which they

8   did not prevail to the United States within five days of the resolution of the dispute.

9   Settling Work Defendants shall be disbursed any balance of the escrow account.

10  All payments to the United States under this Paragraph shall be made in

11  accordance with Paragraphs 51.b and 51.c (Payment Instructions).  The dispute

12  resolution procedures set forth in this Paragraph in conjunction with the procedures

13  set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms

14  for resolving disputes regarding Settling Work Defendants' obligation to reimburse

15  the United States for its Future Response Costs.

16       53.    In the event that any payment for Past Response Costs or for Future

17  Response Costs required under this Section is not made by the date required,

18  Settling Work Defendants shall pay Interest on the unpaid balance.  The Interest to

19  be paid on Past Response Costs under this Paragraph shall begin to accrue on the

20  Effective Date.  The Interest on Future Response Costs shall begin to accrue on the

21  date of the bill.  The Interest shall accrue through the date of Settling Work

22  Defendants' payment.  Payments of Interest made under this Paragraph shall be in

23  addition to such other remedies or sanctions available to Plaintiff by virtue of

24  Settling Work Defendants' failure to make timely payments under this Section

25  including, but not limited to, payment of stipulated penalties pursuant to Paragraph

26  69.

27       XVII.  <u>INDEMNIFICATION AND INSURANCE</u>

28                                 - 49 -

54.   Settling Defendants' Indemnification of the United States.

a.   The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Settling Work Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Work Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Settling Work Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Work Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Work Defendants in carrying out activities pursuant to this Consent Decree.  Neither Settling Work Defendants nor any such contractor shall be considered an agent of the United States.

b.   The United States shall give Settling Work Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 54, and shall consult with Settling Work Defendants prior to settling such claim.

55.     Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between any one or more of the Settling Work Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Work Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Work Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

56.     No later than 15 days before commencing any on-Site Work, Settling Work Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 45.b of Section XIII (Certification of Completion) commercial general liability insurance with limits of five million dollars, for any one occurrence, and automobile liability insurance with limits of five million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Settling Work Defendants pursuant to this Consent Decree.  In addition, for the duration of this Consent Decree, Settling Work Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Work Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Settling Work Defendants shall provide to EPA certificates of such insurance and a copy of

- 51 -

1   each insurance policy.  Settling Work Defendants shall resubmit such certificates

2   and copies of policies each year on the anniversary of the Effective Date.  If

3   Settling Work Defendants demonstrate by evidence satisfactory to EPA that any

4   contractor or subcontractor maintains insurance equivalent to that described above,

5   or insurance covering the same risks but in a lesser amount, then, with respect to

6   that contractor or subcontractor, Settling Work Defendants need provide only that

7   portion of the insurance described above that is not maintained by the contractor or

8   subcontractor.

9                          XVIII.  FORCE MAJEURE

10      57.    "Force majeure," for purposes of this Consent Decree, is defined as

11  any event arising from causes beyond the control of Settling Work Defendants, of

12  any entity controlled by Settling Work Defendants, or of Settling Work

13  Defendants' contractors, that delays or prevents the performance of any obligation

14  under this Consent Decree despite Settling Work Defendants' best efforts to fulfill

15  the obligation.  The requirement that Settling Work Defendants exercise "best

16  efforts to fulfill the obligation" includes using best efforts to anticipate any

17  potential force majeure event and best efforts to address the effects of any potential

18  force majeure event (1) as it is occurring and (2) following the potential force

19  majeure event, such that the delay is minimized to the greatest extent possible.

20  "Force Majeure" does not include financial inability to complete the Work or a

21  failure to attain the Performance Standards.

22      58.    If any event occurs or has occurred that may delay the performance of

23  any obligation under this Consent Decree, whether or not caused by a force

24  majeure event, Settling Work Defendants shall notify orally EPA's Project

25  Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in

26  the event both of EPA's designated representatives are unavailable, the Director of

27  the Superfund Division, EPA Region 9, within ten (10) days of when Settling

28                                    - 52 -

Work Defendants first knew that the event might cause a delay. Within ten (10) days thereafter, Settling Work Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Work Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Settling Work Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Settling Work Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Work Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Work Defendants shall be deemed to know of any circumstance of which Settling Work Defendants, any entity controlled by Settling Work Defendants, or Settling Work Defendants' contractors knew or should have known.

59. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Work Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA

1  will notify Settling Work Defendants in writing of the length of the extension, if
2  any, for performance of the obligations affected by the force majeure event.

3       60.    If Settling Work Defendants elect to invoke the dispute resolution
4  procedures set forth in Section XIX (Dispute Resolution), they shall do so no later
5  than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Work
6  Defendants shall have the burden of demonstrating by a preponderance of the
7  evidence that the delay or anticipated delay has been or will be caused by a force
8  majeure event, that the duration of the delay or the extension sought was or will be
9  warranted under the circumstances, that best efforts were exercised to avoid and
10 mitigate the effects of the delay, and that Settling Work Defendants complied with
11 the requirements of Paragraphs 57 and 58.  If Settling Work Defendants carry this
12 burden, the delay at issue shall be deemed not to be a violation by Settling Work
13 Defendants of the affected obligation of this Consent Decree identified to EPA and
14 the Court.

15                      XIX.  DISPUTE RESOLUTION

16      61.    Unless otherwise expressly provided for in this Consent Decree, the
17 dispute resolution procedures of this Section shall be the exclusive mechanism to
18 resolve disputes arising under or with respect to this Consent Decree.  However,
19 the procedures set forth in this Section shall not apply to actions by the United
20 States to enforce obligations of Settling Defendants that have not been disputed in
21 accordance with this Section.

22      62.    Any dispute which arises under or with respect to this Consent Decree
23 shall in the first instance be the subject of informal negotiations between the parties
24 to the dispute.  The period for informal negotiations shall not exceed twenty (20)
25 days from the time the dispute arises, unless it is modified by written agreement of
26 the parties to the dispute.  The dispute shall be considered to have arisen when one
27 party sends the other parties a written Notice of Dispute.

28                                   - 54 -

63.    Statements of Position.

a.    In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within seven (7) days after the conclusion of the informal negotiation period, Settling Work Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Settling Work Defendants.  The Statement of Position shall specify Settling Work Defendants' position as to whether formal dispute resolution should proceed under Paragraph 64 or Paragraph 65.

b.    Within fourteen (14) days after receipt of Settling Work Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 64 or 65.  Within five (5) days after receipt of EPA's Statement of Position, Settling Work Defendants may submit a Reply.

c.    If there is disagreement between EPA and Settling Work Defendants as to whether dispute resolution should proceed under Paragraph 64 or 65, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Work Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 64 and 65.

64.    Record Review.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Work Defendants regarding the validity of the ROD's provisions.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Superfund Division, EPA Region 9, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 64.a.  This decision shall be binding upon Settling Work Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 64.c and 64.d.

c.    Any administrative decision made by EPA pursuant to Paragraph 64.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Work Defendants with the Court and served on all Parties within ten (10) days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the

dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Work Defendants' motion.

d.      In proceedings on any dispute governed by this Paragraph, Settling Work Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 64.a.

65.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      Following receipt of Settling Work Defendants' Statement of Position submitted pursuant to Paragraph 63, the Director of the Superfund Division, EPA Region 9, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Work Defendants unless, within ten days of receipt of the decision, Settling Work Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Work Defendants' motion.

b.      Notwithstanding Paragraph O (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

66.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Settling

Work Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 75.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Work Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

67.    Settling Work Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 68 and 69 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  Settling Cash Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraph 69.b for late or inadequate payment as set forth in Paragraph 69.b.  "Compliance" by Settling Work Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports or other deliverables approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

68.    Stipulated Penalty Amounts - Work (other than Plans, Reports, or Other Deliverables).

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 68.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th day |

- 58 -

1          $2,500                              15th through 30th day

2          $5,000                              31st day and beyond

3          b.      Compliance Milestones.

4                  A.      Failure to submit the following deliverables in a timely

5      and adequate fashion:

6                          i)  the RD/RA Work Plan;

7                          ii) the Site Management Plan;

8                          iii) the Health and Safety Plan;

9                          iv) the Sampling and Analysis Plan;

10                         v)  the Construction Quality Assurance Plan;

11                         vi) the Institutional Controls Implementation and Assurance

12     Plan;

13                         vii)  the Pre-Design Work Plan

14                         viii)  the preliminary design submission;

15                         ix) the intermediate design submission;

16                         x)   the prefinal/final design submission; and

17                         xi) the Operation and Maintenance Manual

18                 B.      Failure to Comply with the following Work schedule

19     milestones:

20                         i)  Failure to start construction of the Work; and

21                         ii) Failure to start-up SVE system.

22                 C.      Failure to use best efforts to obtain and provide access as

23     required by this Consent Decree.

24         69.     Stipulated Penalty Amounts - Plans, Reports, or other

25     Deliverables.

26         a.      The following stipulated penalties shall accrue per violation per

27     day for failure to submit timely or adequate reports, or other documents, required

28                                          - 59 -

to be submitted pursuant to work plans prepared pursuant to this Consent Decree, except as specified in Paragraph 68 above:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,250 | 15th through 30th day |
| $2,500 | 31st day and beyond |

b.      Each Settling Cash Defendant shall be liable for stipulated penalties for:  (1) late or inadequate payment pursuant to Paragraph 48 (Obligations of Settling Cash Defendants) of this Consent Decree; (2) a violation of Section VIII (Access and Institutional Controls); or (3) a violation of Section XXIV (Retention of Records).  The stipulated penalty for any late payment or payment of less than the full amount due as set forth in Paragraph 48 for each Settling Cash Defendant making such late payment or inadequate payment shall be $5,000 per day.  Upon written demand by EPA, payment shall be made in accordance with Paragraph 73 of this Section.

70.      In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 83 (Work Takeover) of Section XXI (Covenants Not to Sue by Plaintiff), Settling Work Defendants shall be liable for a stipulated penalty in the amount of five hundred thousand dollars ($500,000).

71.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section X (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Work Defendants of any deficiency; (2) with respect to a decision by the Director of the

Superfund Division, EPA Region 9, under Paragraph 64.b or 65.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the date that Settling Work Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

72.     Following EPA's determination that Settling Work Defendants have failed to comply with a requirement of this Consent Decree, EPA may give Settling Work Defendants written notification of the same and describe the noncompliance.  EPA may send Settling Work Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Work Defendants of a violation.

73.     All penalties accruing under this Section shall be due and payable to the United States within 45 days of Settling Defendants' receipt from EPA of a demand for payment of the penalties and written notification of EPA's determination that Settling Work Defendants failed to comply with a requirement of this Consent Decree, including a description of the noncompliance, if not already provided, unless Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution).  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraphs 51.b and 51.c (Payment Instructions).

74.     The payment of penalties shall not alter in any way Settling Work Defendants' obligation to complete the performance of the Work required under this Consent Decree.

75.     Penalties shall continue to accrue as provided in Paragraph 71 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Work Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Paragraph 75.c;

c.     If the District Court's decision is appealed by any Party, Settling Work Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 15 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 30 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Work Defendants to the extent that they prevail.

76.     If Settling Work Defendants fail to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest.  Settling Work Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 73.

77.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other

- 62 -

remedies or sanctions available by virtue of Settling Work Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

78.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS NOT TO SUE BY PLAINTIFF

79.     In consideration of the actions that will be performed and the payments that will be made by Settling Work Defendants under the terms of the Consent Decree, and except as specifically provided in Paragraph 81 of this Section, the United States covenants not to sue or to take administrative action against Settling Work Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA for performance of the Work, for recovery of Past Response Costs, for recovery of Future Response Costs.  The covenant not to sue with respect to the performance of Work shall take effect upon the Certification of Completion of the Work by EPA pursuant to Paragraph 45 of Section XIII (Certification of Completion); the covenant not to sue with respect to the Past Response Costs shall take effect upon payment of such costs by the Settling Work Defendants pursuant to Paragraph 49.a (Payments for Response Costs).  The covenant not to sue with respect to the performance of Work is conditioned upon satisfactory performance by the Settling Work Defendants of their obligations under this Consent Decree, including all

O&M required under the Operation and Maintenance Manual approved or developed by EPA pursuant to this Consent Decree and the SOW.

80.    In consideration of the payments made and costs incurred to date, including payments made or to be made pursuant to this Consent Decree by or on behalf of each Settling Cash Defendant, except as specifically provided in Paragraph 82 of this Section, the United States covenants not to sue or to take administrative action pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA against the Settling Cash Defendants for performance of the Work, for recovery of Past Response Costs, for recovery of Future Response Costs.  These covenants are conditioned upon the satisfactory performance by each individual Settling Cash Defendant of its respective obligations under this Consent Decree.

81.    <u>General Reservations of Rights as to the Settling Work Defendants</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Work Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Work Defendants with respect to:

a.    claims based on a failure by the Settling Work Defendants to meet a requirement of this Consent Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Phase 1a Area;

c.    liability based on Settling Work Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

d.      liability for damages for injury to, destruction of, or loss of natural resources, and the costs of any natural resource damage assessments;

e.      criminal liability;

f.      liability for violations of federal or state law which occur during or after implementation of the Work;

g.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of the SOW or Related Work Plans);

h.      liability for additional operable units at the Site or the final response action;

i.      liability for costs that the United States will incur related to the Site but which are not within the definition of Future Response Costs; and

j.      previously incurred costs of response above the amounts paid pursuant to Paragraph 49.a (Payment of Past Response Costs).

82.     <u>General Reservations of Rights as to the Settling Cash Defendants.</u> The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Cash Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Cash Defendants with respect to:

a.      claims based on a failure by the Settling Cash Defendants to meet any applicable requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Phase 1a Area;

c.      liability for damages for injury to, destruction of, or loss of natural resources, and the costs of any natural resource damage assessments;

d.      criminal liability;

e.      liability for additional operable units at the Site or the final response action; and

f.      liability for costs that the United States will incur related to the Site but which are not within the definition of Future Response Costs.

83.    <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Work Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Work Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Work Defendants a period of ten days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the ten-day notice period specified in Paragraph 82.a, Settling Work Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Work Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 82.b.

c.      Settling Work Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution), to dispute EPA's implementation of a Work

- 66 -

Takeover under Paragraph 83.b.  However, notwithstanding Settling Work
Defendants' invocation of such dispute resolution procedures, and during the
pendency of any such dispute, EPA may in its sole discretion commence and
continue a Work Takeover under Paragraph 83.b until the earlier of (1) the date
that Settling Work Defendants remedy, to EPA's satisfaction, the circumstances
giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date
that a final decision is rendered in accordance with Section XIX (Dispute
Resolution) requiring EPA to terminate such Work Takeover.

       d.     After commencement and for the duration of any Work
Takeover, EPA shall have immediate access to and benefit of any performance
guarantee(s) provided pursuant to Section XII, in accordance with the provisions of
Paragraph 43.  Any unreimbursed costs incurred by EPA in performing Work
under the Work Takeover shall be considered Future Response Costs that Settling
Work Defendants shall pay pursuant to Section XVI (Payments for Response
Costs).

     84.    Notwithstanding any other provision of this Consent Decree, the
United States retains all authority and reserves all rights to take any and all
response actions authorized by law.

XXII.  <u>COVENANTS BY SETTLING DEFENDANTS</u>

     85.    <u>Covenant Not to Sue</u>.  Subject to the reservations in Paragraph 86,
Settling Defendants covenant not to sue and agree not to assert any claims or
causes of action against the United States with respect to the Work, past response
actions regarding the Site, Past Response Costs, Future Response Costs, and this
Consent Decree, including, but not limited to:

       a.     any direct or indirect claim for reimbursement from the
Hazardous Substance Superfund (established pursuant to the Internal Revenue

Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.    any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Work, past response actions regarding the Omega Property, Past Response Costs, Future Response Costs, and this Consent Decree;  or

c.    any claims arising out of the response actions at or in connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

86.    Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans, reports, other deliverables or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

87.    Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

88.    Claims Against *De Minimis* and Ability to Pay Parties.  Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

XXIII.  <u>EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION</u>

89.    Except as provided in Paragraph 88, nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraph 88, each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

90.    The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be

otherwise provided by law, for "matters addressed" in this Consent Decree.  With respect to the Settling Work Defendants and the Settling Cash Defendants identified in Part A of Appendix C, the "matters addressed" in this Consent Decree are the Work, Past Response Costs and Future Response Costs. With respect to the Settling Cash Defendants identified in Part B of Appendix C, the "matters addressed" in this Consent Decree are the Work, Future Response Costs, and only that portion of Past Response Costs attributable to direct and indirect costs that the United States has incurred at or in connection with OU-1.

91.    Settling Defendants shall, with respect to any suit or claim brought by them for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

92.    Settling Defendants shall, with respect to any suit or claim brought against them for matters related to the Site, notify in writing the United States within ten days of service of the complaint on Settling Defendants.  In addition, Settling Defendants shall notify the United States within ten days of service or receipt of any Motion for Summary Judgment and within ten days of receipt of any order from a court setting a case for trial.

93.    <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

# XXIV.  ACCESS TO INFORMATION

94.     Settling Work Defendants shall provide to EPA, upon request, copies of all records, reports, documents and other information (including records, reports, documents and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Work Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

95.     Business Confidential and Privileged Documents.

a.     Settling Work Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Work Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.     Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiff with the following: (1) the title of the Record;

(2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only.  Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved.

c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

96.     No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  RETENTION OF RECORDS

97.     Until five years after Settling Work Defendants' receipt of EPA's notification pursuant to Paragraph 45 of Section XIII (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records

(including Records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.  As to records that relate to the performance of the Work and copies of data as referred to in the preceding sentence, but not as to any other records, the requirement for Settling Defendants to preserve and retain and to instruct their contractors and agents to preserve such records may be satisfied by preservation and retention of such records by the Settling Work Defendants' Project Coordinator.  Paragraph 98 shall apply to such copies and/or data retained by Settling Work Defendants' Project Coordinator.

98.     At the conclusion of this record retention period, Settling Defendants shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, Settling Defendants shall deliver any such Records to EPA.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide the Plaintiff with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until

1  the United States has had a reasonable opportunity to dispute the privilege claim

2  and any such dispute has been resolved in the Settling Defendants' favor.

3  However, no Records created or generated pursuant to the requirements of this

4  Consent Decree shall be withheld on the grounds that they are privileged or

5  confidential.

6        99.    Each Settling Defendant hereby certifies individually that, to the best

7  of its knowledge and belief, after thorough inquiry, it has not altered, mutilated,

8  discarded, destroyed or otherwise disposed of any Records (other than identical

9  copies) relating to its potential liability regarding the Site since notification of

10  potential liability by the United States or the State or the filing of suit against it

11  regarding the Site and that it has fully complied with any and all EPA requests for

12  information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§

13  9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

14            XXVI.  <u>NOTICES AND SUBMISSIONS</u>

15        100.   Whenever, under the terms of this Consent Decree, written notice is

16  required to be given or a report or other document is required to be sent by one

17  Party to another, it shall be directed to the individuals at the addresses specified

18  below, unless those individuals or their successors give notice of a change to the

19  other Parties in writing.  All notices and submissions shall be considered effective

20  upon receipt, unless otherwise provided.  Written notice as specified in this Section

21  shall constitute complete satisfaction of any written notice requirement of the

22  Consent Decree with respect to the United States, EPA, and Settling Defendants,

23  respectively.  Notices required to be sent to EPA, and not to the United States,

24  under the terms of this Consent Decree should not be sent to the U.S. Department

25  of Justice.

26

27  As to the United States:       Chief, Environmental Enforcement Section
                                  Environment and Natural Resources Division

28                                  - 74 -

U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

and:                    Lynda Deschambault
                        EPA Project Coordinator
                        United States Environmental Protection Agency
                        Region 9
                        75 Hawthorne Street
                        SFD-7-1
                        San Francisco, CA 94105

As to EPA:              Lynda Deschambault
                        EPA Project Coordinator
                        United States Environmental Protection Agency
                        Region 9
                        75 Hawthorne Street
                        SFD-7-1
                        San Francisco, CA 94105

As to the Regional Financial Management Officer:
                        Regional Financial Management Officer
                        United States Environmental Protection Agency
                        Region 9
                        75 Hawthorne Street
                        San Francisco, CA 94105

As to Settling Work Defendants:
                        De Maximis
                        Settling Work Defendants' Project Coordinator
                        5225 Canyon Crest Drive, Building 200, Suite 253
                        Riverside, California  92507

## XXVII.  RETENTION OF JURISDICTION

101.   This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

1

## XXVIII.  APPENDICES

2      102.   The following appendices are attached to and incorporated into this

3  Consent Decree:

"Appendix A" is the ROD.
"Appendix B" is the SOW.
"Appendix C" is the complete list of the Settling Cash Defendants.
"Appendix D" is the complete list of the Settling Work Defendants.
"Appendix E" is the payment schedule for that one Settling Cash
Defendant.

"Appendix F" is the Performance Guarantee.

## XXIX.  COMMUNITY INVOLVEMENT

      103.   If requested by EPA, Settling Work Defendants shall participate in the

community involvement plan to be developed by EPA.  EPA will determine the

appropriate role for Settling Work Defendants under the Plan.  Settling Work

Defendants shall also cooperate with EPA in providing information regarding the

Work to the public.  As requested by EPA, Settling Work Defendants shall

participate in the preparation of such information for dissemination to the public

and in public meetings which may be held or sponsored by EPA to explain

activities at or relating to the Site.  Costs incurred by the United States in

accordance with this Section shall be considered Future Response Costs that

Settling Work Defendants shall pay pursuant to Section XVI (Payments for

Response Costs).

## XXX.  MODIFICATION

      104.   Material modifications to this Consent Decree, including the SOW,

shall be in writing, signed by the Parties, and shall be effective upon approval by

the Court.  Non-material modifications to this Consent Decree, including the SOW,

shall be in writing and shall be effective when signed by the Parties.  A

modification to the SOW shall be considered material if it fundamentally alters the

basic features of the selected remedy within the meaning of 40 C.F.R. §

300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW,

the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

105.   Modifications (non-material or material) that do not affect the obligations of, and that fully protect the benefits afforded to, Settling Cash Defendants may be executed without the signatures of Settling Cash Defendants.

106.   Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

### XXXI.  <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

107.   This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

108.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

### XXXII.  <u>SIGNATORIES/SERVICE</u>

109.   Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

110.   Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree

1  unless the United States has notified Settling Defendants in writing that it no

2  longer supports entry of the Consent Decree.

3      111.   Each Settling Defendant shall identify, on the attached signature page,

4  the name, address and telephone number of an agent who is authorized to accept

5  service of process by mail on behalf of that Party with respect to all matters arising

6  under or relating to this Consent Decree.  Settling Defendants hereby agree to

7  accept service in that manner and to waive the formal service requirements set

8  forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local

9  rules of this Court, including, but not limited to, service of a summons.  Settling

10 Defendants need not file an answer to the complaint in this action unless or until

11 the Court expressly declines to enter this Consent Decree.

12                    XXXIII.  <u>FINAL JUDGMENT</u>

13     112.   This Consent Decree and its appendices constitute the final, complete,

14 and exclusive agreement and understanding among the Parties with respect to the

15 settlement embodied in the Consent Decree.  The Parties acknowledge that there

16 are no representations, agreements or understandings relating to the settlement

17 other than those expressly contained in this Consent Decree.

18     113.   Upon entry of this Consent Decree by the Court, this Consent Decree

19 shall constitute a final judgment between and among the United States and Settling

20 Defendants.  The Court finds that there is no just reason for delay and therefore

21 enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

22

23       SO ORDERED THIS 6th DAY OF OCTOBER, 2010

24

25       _____

26       Honorable Terry J. Hatter, Jr.
         United States District Judge

27

28                        - 78 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Signature Page for Consent Decree regarding the Omega Chemical Corporation Superfund Site OU-1 RD/RA

FOR PLAINTIFF UNITED STATES OF AMERICA

Date:  _____

_____
ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

Date:  _____

_____
KARL J. FINGERHOOD
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

Signature Page for Consent Decree regarding the Omega Chemical Corporation Superfund Site OU-1 RD/RA

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date:  _____

_____
JANE DIAMOND
Director, Superfund Division
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA  94105

Date:  _____

_____
STEPHEN D. BERNINGER
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA  94105

Signature Page for Consent Decree regarding the Omega Chemical Corporation Superfund Site OU-1 RD/RA

**FOR** _____

_____                    _____

Date                                        Name (print):
                                               Title:
                                               Address:

Agent Authorized to Accept Service on Behalf of Above-signed Party:

                                           _____
                                           Name (print):
                                               Title:
                                               Address:
                                               Phone:
                                               email:

APPENDIX A

<u>RECORD OF DECISION</u>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX B

RD/RA STATEMENT OF WORK

APPENDIX C

<u>SETTLING CASH DEFENDANTS</u>

<u>Part A</u>

AVX CORPORATION
ALLEN FOAM CORPORATION
ALLEN L. BENDER, INC.
ANZCO (FORMERLY ANZON CO.)
ARROWHEAD BRASS PRODUCTS INC., A DISSOLVED CALIFORNIA
      CORPORATION
BC LABORATORIES, INC.
BELL INDUSTRIES, INC.
BOURNS, INC.
BOWEN PRINTING, INC.
BRUNTON ENTERPRISES, INC.
BUILDING MATERIALS CORPORATION OF AMERICA, D/B/A GAF
      MATERIALS CORPORATION
CABOT CORPORATION
CATHOLIC HEALTHCARE WEST DBA ST. MARY MEDICAL CENTER
CERADYNE, INC.
CITY OF CARLSBAD
CITY OF SANTA BARBARA
COGNIS CORPORATION AS SUCCESSOR TO HENKEL CORPORATION
COLLEGE OF THE DESERT
COLUMBIA VENTURES CORPORATION
COMMAIR MECHANICAL SERVICES
COOPER INDUSTRIES, LLC SUCCESSOR TO MCGRAW EDISON
      COMPANY
CRANE CO.
EASTMAN KODAK COMPANY
ENGARD COATINGS CORPORATION  CORCHEM CORPORATION
FORT KENT HOLDINGS, INC. ON BEHALF OF DUNHAM BUSH INC.
FRESNO UNIFIED SCHOOL DISTRICT
GAMBOA'S BODY & FRAME INC.
GOOD-WEST RUBBER CORP.
HARTWELL CORPORATION
HEXFET AMERICA BY: INTERNATIONAL RECTIFIER CORPORATION

HUBBELL INCORPORATED (MARVIN ELECTRIC MANUFACTURING
        CO.)
I & I DEBURRING
JOHANSON DIELECTRICS INC.
KEY MECHANICAL SERVICE COMPANY
L-3 SERVICES, INC. (FORMERLY THE TITAN CORPORATION)
LAMIRADA PRODUCTS COMPANY, INC. / USG CORPORATION
LEAR SIEGLER DIVERSIFIED HOLDINGS CORP., AS SUCCESSOR TO
        LEAR SIEGLER, INC.
LEVAN SPECIALTY INC., A CA. CORP.
LUPPEN HOLDINGS, INC. & METAL PRODUCTS ENGINEERING
M & M PRINTED BAG INC.
MADISON INDUSTRIES
MARTEK POWER INC. FORMERLY MARTEK POWER ABBOTT, INC.
MAXON INDUSTRIES, INC.
MELLES GRIOT, INC. / BARLOWORLD USA INC.
NMB TECHNOLOGIES CORPORATION
NORTHWESTERN, INC.
NORTHROP GRUMMAN SYSTEMS CORPORATION (AS SUCCESSOR IN
        INTEREST TO NORTHROP GRUMMAN SPACE & MISSION
        SYSTEMS CORP. (F/K/A TRW INC.))
NOVACAP, INC.
PENSKE MOTOR GROUP, INC.
PETRO LOCK, INC.
PNEUDRAULICS, INC.
POCINO FOODS CO.
PRIMUS, INC.
QUAKER CHEMICAL CORPORATION
QUAKER CITY PLATING LTD
RICOH PRINTING SYSTEMS AMERICA, INC. (F/K/A DATAPRODUCTS
        CORPORATION)
ROCKWELL COLLINS OPTRONICS, INC., F/K/A/ KAISER ELECTRO-
        OPTICS, INC.
SANTA FE BRAUN INC.
SHAMROCK SCIENTIFIC SPECIALTY SYSTEMS, INC.
STEELSCOPE, FKA, BHP COATED STEEL
SUPERIOR CONTROLS CO, INC.
TDY INDUSTRIES, INC.
TECH GRAPHIC INC.
TEXTRON INC.

THE A & T GROUP, INC. (AIR MECHANICAL INC.)
THE HERTZ CORPORATION
TIMEMED LABELING SYSTEMS, INC.
TRIBUNE COMPANY, AS SUCCESSOR IN INTEREST TO THE TIMES
MIRROR COMPANY
TUCSON VALLEY LIQUIDATING TRUST F/B/O CAL-MART
UCB
UNISTRUT INTERNATIONAL CORPORATION, FORMERLY KNOWN AS
UNISTRUT CORPORATION
UNIVERSITY OF SOUTHERN CALIFORNIA
VENTURA TOWNEHOUSE INC
WESTERN METAL DECORATING COMPANY
WESTMONT COLLEGE
YORK INTERNATIONAL CORPORATION

<u>Part B</u>

AIR PRODUCTS AND CHEMICALS, INC.
APPROPRIATE TECHNOLOGIES
C RICHARD LLC, AS SUCCESSOR TO DEUTSCH ENGINEERED
     CONNECTING DEVICES
CHEROKEE INTERNATIONAL INC., A DISSOLVED CORPORATION
CITY OF SANTA MARIA
DATATRONICS ROMOLAND, INC.
GAMBRO RENAL PRODUCTS, INC., FOR AND AS SUCCESSOR TO
     GAMBRO, INC.
GSF ENERGY, LLC, SUCCESSOR TO GSF ENERGY,  INC.
LOMA LINDA UNIVERSITY
MACY'S RETAIL HOLDINGS, INC., FOR BROADWAY STORES, INC. AND
THE MAY DEPARTMENT STORES COMPANY
MAXWELL TECHNOLOGIES, INC.
TYCO HEALTHCARE GROUP LP, SOLELY FOR AND ON BEHALF OF
     ARMIN PLASTICS; MALLINCKRODT INC., SOLELY FOR AND AS
     SUCCESSOR TO MALLINCKRODT/TRONMED AND
     MALLINCKRODT CRITICAL CARE; AND NELLCOR PURITAN
     BENNETT LLC SOLELY FOR AND AS SUCCESSOR BY MERGER
     TO PURITAN BENNETT CORPORATION
RESINART
SHELL OIL COMPANY
SOUTHERN CALIFORNIA EDISON COMPANY
TELEDYNE TECHNOLOGIES INCORPORATED (SOLELY FOR AND ON
     BEHALF OF TELEDYNE CAST PARTS, TELEDYNE CONTROLS
     AND TELEDYNE MICROELECTRONIC TECHNOLOGIES)
TODD PACIFIC SHIPYARDS CORP
TRW TECHNAR INC.
UNITED PARCEL SERVICE, INC. (OH)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX D

<u>SETTLING WORK DEFENDANTS</u>

Alcoa Inc.

Allied Signal, Inc. (n/k/a Honeywell International, Inc.)

Alpha Therapeutic Corporation

Anja Engineering Corp. n/k/a/ Scripto-Tokai Corporation

Applied Micro Circuits Corporation

Arlon Adhesives & Films

Astro Aluminum Treating Co., Inc.

Atlantic Richfield Company

BASF Corporation

Baxter Healthcare Corporation for Baxter/Bentley Labs

The Boeing Company, on behalf of itself, Boeing Satellite Systems, Inc., and
        McDonnell Douglas Helicopter Company

BP Amoco Chemical Company (on behalf of Hitco Inc.)

California Hydroforming Co. Inc.

Center Line Wheel Corp.

Chemical Waste Management, Inc.

Cintas Corporation (successor to Unitog Company)

Coatings Resource Corporation

Columbia Showcase & Cabinet Co., Inc.

County of Los Angeles

Crosby & Overton, Inc.

C.T.L. Printing Industries Inc.

Dow Chemical Company

Dude, Inc.

Engraph, Inc./Patton Sonoco Products n/k/a/ Sonoco Products Company

Forenco, Inc.

General Dynamics Corporation

Gulfstream Aerospace Corporation

Harpers (n/k/a/ FHL Group)

Hercules Incorporated

Hexcel Corporation

Hitachi Home Electronics (America), Inc.

Huck Manufacturing Company n/k/a Federal-Mogul Corporation

International Paper

Johns Manville/Celite Corporation

K.C. Photo Engraving Co.

Kimberly-Clark Worldwide Inc., Fullerton Mill

Kinder Morgan Liquids Terminals, LLC

Los Angeles County Metropolitan Transportation Authority

Luxfer Limited USA by British Alcan Aluminum PLC

Majon, Inc./Hurst

Masco Building Products Corp.

Mattel, Inc.

Metropolitan Water District of Southern California

Norris Industries, Inc.

Northrop Grumman Guidance and Electronics Company, Inc. (F/K/A Litton
        Systems, Inc.)

Ohline Corp.

Pacific Bell Telephone Company

Pilkington PLC

Quest Diagnostics Clinical Laboratories, Inc. (f.k.a. Bio Science Enterprises)

Raytheon Company

Raytheon Company (Hughes)

Regents of the University of California

Reichhold Chemicals, Inc./Bond-Well Adhesives

Robison Prezioso, Inc.

Safety-Kleen Sytems, Inc.

Schering Corporation

Sempra Energy Solutions

The Sherwin-Williams Company

Shiley, Inc.

Sigma Casting Corporation (n.k.a Howmet Aluminum Casting Inc.)

Signet Armorlite, Inc.

Soco West, Inc. as successor to Holchem, Inc.

Sparton Technology, Inc.

Texaco Inc.

Texas Instruments Incorporated

Trane USA, Inc. (f/k/a American Standard, Inc.)

Union Oil Company of California

Univar Corp., Univar USA Inc. (f/k/a VanWaters & Rogers Inc., Vopak
        Distribution Americas Inc.)

Universal City Studios LLLP, a Delaware limited liability limited partnership
        (formerly known as Universal City Studios LP, Universal City Studios

LLC, and Universal City Studios, Inc.); for itself and for the following fictitious business names, affiliates, divisions or departments:  Universal City Studios; Universal Studios; Universal Studios, Inc., formerly known as MCA INC.; MCA/Universal Studios; MCA/Universal; Universal Title & Optical; and NBC Universal, Inc., formerly known as National Broadcasting Company, Inc. (including the following fictitious business names, divisions or departments: NBC Studios, N.B.C. Studios, NBC and N.B.C.)

Vertis Communications

Walt Disney Pictures and Television

Weber Aircraft, Inc.

Yort, Inc. (Troy Lighting, Inc. - Tiffany Division)

APPENDIX E

<u>PAYMENT SCHEDULE FOR CERTAIN SETTLING CASH DEFENDANT</u>

Petro Lock has 15 monthly payments of $3000 per month totaling $45,000.

APPENDIX F

<u>PERFORMANCE GUARANTEE</u>